UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| MADGRIP HOLDINGS, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 16-cv-272 |
| | ) |
| WEST CHESTER HOLDINGS, INC., | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Plaintiff MadGrip Holdings, LLC ("MadGrip") brings this action claiming that Defendant West Chester Holdings, Inc. ("West Chester") has infringed its patent relating to the manufacture of utility gloves. West Chester counters that the patent is invalid because the technology in the patent is not new, and that MadGrip's inequitable conduct in proceedings before the United States Patent and Trademark Office ("USPTO") renders the patent unenforceable.

Now pending before the Court is MadGrip's motion to strike West Chester's affirmative defenses and to dismiss its counterclaims. After MadGrip filed its motion, West Chester moved to amend its counterclaims and to add new allegations of inequitable conduct. Acknowledging the proposed amendments, MadGrip has renewed its motions to strike and to dismiss. For the reasons set forth below, the motion for leave to amend is **granted** in part and **denied** in part, MadGrip's initial motions to strike and to dismiss are **granted**, and its subsequent motions are

**granted** in part and **denied** in part.

## Factual Background

### I. MadGrip's Claims

MadGrip is a glove company located in Essex Junction, Vermont. In 2006 or 2007, David Gellis, one of the principals of MadGrip, allegedly devised a process for manufacturing utility gloves using injection molding technology. MadGrip uses this technology to produce a glove with a rubberized "concave palm," "pre-curved finger construction," and a "breathable knit" backside. ECF No. 1 at 5. The injection molded glove is reportedly "contoured with the natural contours of the wearer's hand to allow for maximum motion while still providing cushion to the wearer's palm." *Id.* at 5.

On July 16, 2007, Mr. Gellis filed a provisional patent application describing this manufacturing technique. After several iterations of the application, the USPTO ultimately granted United States Patent No. 9,346,202 (the "'202 Patent") on May 24, 2016. MadGrip is the assignee of the '202 Patent. Representative Claim 1 of the '202 Patent reads, in part, that the patent covers "[a] method of manufacturing a utility glove" including:

> injecting an elastomeric material into the cavity to form the molded portion . . . said molded portion comprising greater than 50% of the circumference of each of the fingers along the length of each finger while leaving an area of fabric without elastomeric material on each finger wherein the molded portion

2

> comprises a palm having a middle and edges, the palm
> edges comprising a heel, a front corresponding to
> knuckles of the fingers, a thumb side and an outer
> side, wherein the middle of the palm is set in from the
> heel, the front, the thumb side and the outer side of
> the palm to form a concave shape.

ECF No. 1-1 at 16.

Defendant West Chester sells a line of gloves known as Sumo Grip. Sumo Grip advertising uses the term "injection grip technology," and references the glove's "injection-molded grip." ECF No. 1 at 10. MadGrip claims that the Sumo Grip glove infringes elements specific to Claim 1 of the '202 patent, including that "the molded portion of the Sumo Grip glove is greater than 50% of the circumference of each finger, and it includes a palm with a middle and edges, a thumb side and an outer side, and the middle of the palm is set in from the edges of the palm to form a concave shape." *Id.* at 11. MadGrip further alleges, upon information and belief, that the Sumo Grip glove infringes other Claims within the '202 Patent as well. *Id.* ("the Sumo Glove infringes at least Claims 1-5, 7-10 and 13 of the '202 Patent").

On May 18, 2016, counsel for MadGrip informed West Chester that the '202 Patent would issue on May 24, 2016 and that West Chester would likely be infringing. The May 18 letter also requested information about West Chester's manufacturing process. West Chester declined to provide MadGrip with manufacturing information, and allegedly asked MadGrip's attorney to first

3

detail the ways in which the Sumo Grip glove infringes the '202 Patent. West Chester also reportedly noted features of the claims in the '202 Patent that are not present in the Sumo Grip glove, and requested contrary information. West Chester alleges that MadGrip has not responded to its requests.

MadGrip filed its Complaint in this case on October 14, 2016, asserting one count of patent infringement for "making, using, importing, selling, and/or offering for sale Sumo Grip gloves which are manufactured by a method disclosed and claimed in the '202 Patent in violation of 35 U.S.C. § 271, *et seq.*" *Id.* at 13. For relief, MadGrip seeks compensatory damages, including reasonable royalties and/or lost profits; enhanced damages under 35 U.S.C. § 284; attorney's fees; and pre-issuance damages in light of the notice provided to West Chester on May 18, 2016.

## II. **West Chester's Affirmative Defenses and Counterclaims**

West Chester contends that the '202 Patent is invalid and unenforceable. It first claims that Mr. Gellis and MadGrip did not invent, and do not claim to have invented, injection molding in rubberized fabric gloves. West Chester notes that during MadGrip's patent prosecution, the examiner cited a patent granted to J. M. Edwards in 1927 that showed a rubber-coated fabric glove. West Chester also claims that injection molding to make rubberized gloves was known prior to the '202 Patent, and that MadGrip did not disclose relevant prior art to the examiner.

4

In its allegations of inequitable conduct, West Chester asserts that MadGrip and its agents, including the prosecuting attorney for the patent, Kenneth Florek, violated their duty of candor and good faith in dealing with the USPTO. Their claim begins with the rejection of an earlier patent effort: application 13/500,483 (the "'483 application"). After the '483 application was rejected, Attorney Florek, acting on behalf of MadGrip, submitted amended claims to the USPTO and asked for further examination. The examiner reportedly rejected many of the amended claims on the basis of certain "prior art," including patents granted to the aforementioned J. M. Edwards showing a rubber-coated glove, and to "Koliwer" showing injection molding in clothing articles such as boots. According to West Chester, "the examiner found MadGrip's purported invention in many of the claims was obvious in light of the combination of the two (among other references)." *Id.* at 18.

The examiner also commented that certain claims would be allowable if rewritten independently. West Chester alleges that according to the examiner, a glove would be new, and therefore patentable, if the rubberized portion either extended 360 degrees around the back of the hand or terminated on the palm. "Put differently, the examiner found that a glove with a rubberized portion that goes around to the back of the hand a little bit, but does not extend all the way around, would *not* be patentable

5

in light of Edwards and Koliwer." *Id.* at 19. West Chester contends that MadGrip revised its claims to conform with the examiner's statements, and that on March 24, 2016, those claims were allowed and the '202 Patent issued.

West Chester alleges that the Sumo Grip glove has a molded portion that extends to the back of the glove, but does not extend 360 degrees around the body of the glove. In other words, according to West Chester, the Sumo Grip glove is similar to a glove that the examiner concluded would not be patentable. Nonetheless, Attorney Florek and MadGrip are allegedly asserting that the '202 Patent "cover[s] a glove in which the molded portion *does not* terminate on the palm, and *does not* extend 360 degrees around the main body of the glove." *Id.* at 21.

West Chester argues that, given the alleged inconsistency between MadGrip's infringement claim and the '202 Patent, the examiner must have misunderstood MadGrip's application and that MadGrip failed to notify him of the error. Hence, West Chester claims that MadGrip and its counsel violated their duty of candor by misleading the examiner into issuing the '202 Patent, and that this inequitable conduct renders the patent unenforceable.

In a proposed amended pleading, West Chester seeks to supplement its claim of inequitable conduct based upon newly-discovered evidence. West Chester submits that in the course of early discovery, it learned that during the patent application

6

process Attorney Florek submitted a declaration to the examiner from consultant James Stevenson.  Mr. Stevenson stated in his declaration that he had been retained by a third party glove manufacturer.  West Chester has recently learned that this third-party was, in fact, an entity that was cooperating with MadGrip to obtain the patent.  Attorney Florek allegedly offered Mr. Stevenson's opinions to the examiner without disclosing that relationship.

West Chester also claims that Mr. Stevenson mentioned five patents in his declaration, but did not provide copies of the patents.  Further, those patents were not included in MadGrip's Information Disclosure Statement ("IDS").  One of those patents reportedly disclosed a method of using elastomer to mold a glove into the shape of a hand or part of a hand, while the other allegedly described injection molding in boots that could be applied to gloves as well.  ECF No. 31 at 31.  West Chester claims that the duty of candor required disclosure of material patent references, and that the failure to include those five patents in the IDS meant that they were not considered by the examiner.

Finally, West Chester asserts that the Sumo Grip glove has many aspects that are not subject to the claims in the '202 Patent.  For example, West Chester notes that the molded portion of the Sumo Grip glove has no palm with edges, and no middle set

7

to form a concave shape.  These plain differences, West Chester claims, are further evidence of bad faith and deceptive intent.

Echoing its affirmative defenses, West Chester's counterclaims contend that MadGrip's patent claims include the limitation of a palm having a middle and edges, "'wherein the middle of the palm is set in front from the heel, the front, the thumb side and the outer side of the palm to form a concave shape.'" *Id.* at 27.  West Chester submits that the Sumo Grip, in its resting state, has a convex palm with a middle that is higher than the rest of the surrounding palm, and thus cannot be infringing.  Count I of West Chester's counterclaims alleges non-infringement.  Count II asserts invalidity.  Count III alleges unenforceability due to inequitable conduct.

## Discussion

### I. MadGrip's Motions to Strike and to Dismiss

MadGrip contends that West Chester has failed to assert facts that, even if true, would support a claim of inequitable conduct.  MadGrip therefore moves to strike West Chester's affirmative defenses and to dismiss its counterclaims.

#### A. Pleading Standards

Under Fed. R. Civ. P. 12(f), courts "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12.  Rule 12(f) motions to strike are disfavored, as the Second Circuit has

8

explained:

> A motion to strike an affirmative defense under Rule 12(f), Fed. R. Civ. P. for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense. Moreover, even when the facts are not disputed, several courts have noted that a motion to strike for insufficiency was never intended to furnish an opportunity for the determination of disputed and substantial questions of law. This is particularly so when . . . there has been no significant discovery.

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (citation omitted), *vacated on other grounds*, 478 U.S. 1015 (1986).

With respect to West Chester's counterclaims, "[a] motion to dismiss a counterclaim is evaluated under the same standard as a motion to dismiss a complaint." *Radiancy, Inc. v. Viatek Consumer Prods. Grp.*, Inc., 138 F. Supp. 3d 303, 313 (S.D.N.Y. 2014). To survive a motion to dismiss under Rule 12(b)(6), a counterclaim must allege facts that, accepted as true, "state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This standard "require[s] enough facts to 'nudge [the] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Courts have held that this same pleading

9

standard applies to a motion to strike an affirmative defense. *Optigen, LLC v. Int'l Genetics, Inc.*, 777 F. Supp. 2d 390, 399 (N.D.N.Y. 2011); *Aspex Eyewear, Inc. v. Clariti Eyewear, Inc.*, 531 F. Supp. 2d 620, 622 (S.D.N.Y. 2008).

When a case involves a patent claim, Federal Circuit law determines the applicable pleading standard. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1326 (Fed. Cir. 2009). The Federal Circuit has held that a claim of patent unenforceability premised upon inequitable conduct sounds in fraud, and must therefore be pled with particularity as required by Federal Rule of Civil Procedure 9(b). *Id*. at 1331 (citing *Ferguson Beauregard/Logic Controls, Div. of Dover Res. v. Mega Systems, LLC*, 350 F.3d 1327, 1344 (Fed. Cir. 2003)). To plead inequitable conduct "with the requisite 'particularity' under Rule 9(b), the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id*. at 1328.

"The substantive elements of inequitable conduct are: (1) an individual associated with the filing and prosecution of a patent application made an affirmative misrepresentation of a material fact, failed to disclose material information, or submitted false material information; and (2) the individual did so with a specific intent to deceive the PTO." *Id*. at 1327 n.3; *see also Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337,

1350 (Fed. Cir. 2011), *cert. denied*, 133 S.Ct. 644 (2012). While intent "may be averred generally" under Rule 9(b), a pleading of inequitable conduct "must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual" acted with the requisite state of mind. *Exergen*, 575 F.3d at 1328. The Federal Circuit has noted that "[b]ecause direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).

**B. MadGrip's Conduct after the Examiner's Comments**

As discussed above, West Chester contends that Attorney Florek and MadGrip clearly believed that the '202 Patent was broader than what was described by the examiner, and had a duty to communicate that belief. MadGrip asserts that it had no duty to communicate any disagreement with the examiner, and that even assuming particularity, West Chester has failed to state a plausible claim of inequitable conduct. *See, e.g., Capella Photogenics, Inc. v. Cisco Sys.*, 77 F. Supp. 3d 850, 859-60 (N.D. Cal. 2014) (striking affirmative defense because "the behavior alleged simply cannot constitute inequitable conduct").

The duty of good faith, candor, and honesty is an affirmative duty to disclose information and documents that may affect whether the USPTO grants a patent to the invention.

11

*Honeywell Int'l, Inc. v. Universal Avionics Sys. Corp.*, 488 F.3d 982, 999 (Fed. Cir. 2007). As one district court has explained:

> The process of obtaining and maintaining a patent from The United States Patent and Trademark Office (USPTO), called patent prosecution, is essentially an *ex parte* process between the patent applicant and the USPTO. *See generally Atlas Powder Co. v. Ireco Chemicals*, 773 F.2d 1230, 1234 (Fed. Cir. 1985). Because of the *ex parte* nature of patent prosecution, the USPTO and case law require persons involved in patent prosecution, including the patent attorney and inventors, to deal honestly and in good faith with the USPTO during patent prosecution.

*Dura Operating Corp. v. Magna Int'l*, 2011 WL 869372, at *1 (E.D. Mich. Mar. 10, 2011). This duty is reflected in a federal regulation, 37 C.F.R. § 1.56, which requires those associated with procuring a patent, including the patent attorney and inventor, to affirmatively disclose material information that is relevant to patentability. The regulation also provides that "[t]here is no duty to submit information which is not material to the patentability of any existing claim." 37 C.F.R. § 1.56(a). Information is material if: "(1) It establishes, by itself or in combination with other information, a prima facie case of unpatentability of a claim; or (2) It refutes, or is inconsistent with, a position the applicant takes in: (i) Opposing an argument of unpatentability relied on by the Office, or (ii) Asserting an argument of patentability." *Id.*; *see Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs., Ltd.*, 394 F.3d 1348, 1352 (Fed. Cir. 2005) ("In evaluating materiality,

12

we have consistently referred to the definition provided in 37 C.F.R. § 1.56 . . . .").

MadGrip argues that the information allegedly withheld, which was essentially the patent applicant's personal beliefs about the scope of his patent, was not material. For support, MadGrip cites case law pertaining to claim construction. ECF No. 32 at 11. It is well established that claim construction is distinct from an analysis of claims under Rule 12(b). *See, e.g., Deston Therapeutics LLC v. Trigen Labs. Inc.*, 723 F. Supp. 2d 665, 670 (D. Del. 2010) ("the process for properly construing a patent claim is unsuited for a motion to dismiss"). Nonetheless, under the test for materiality set forth in the regulations, MadGrip and its attorney did not withhold any material information. First, MadGrip's silence did not, standing alone, establish a prima facie case of unpatentability. Nor did MadGrip act in a way that was inconsistent with (a) a position it had taken in opposing an argument of unpatentability relied upon by the USPTO, or (b) a position it took while asserting an argument of patentability. The claim here is that MadGrip's understanding was inconsistent with *the examiner's* view, not with its own prior positions or arguments.

Furthermore, MadGrip did not implicitly accept the examiner's viewpoint. MadGrip cites the Manual of Patent Examining Procedure ("MPEP"), which states that "[t]he failure of

13

the applicant to comment on the examiner's statement of reasons for allowance should not be treated as acquiescence to the examiner's statement. *See Salazar v. Procter & Gamble Co.*, 414 F.3d 1342 (Fed. Cir. 2005)." MPEP 1302.14(V).[1] The MPEP also provides that "[t]he examiner's statement should not create an estoppel. Only applicant's statement should create an estoppel." *Id.* MadGrip made no affirmative statement with respect to the examiner's commentary that would now bar it from asserting its view of the patent. *See, e.g., Salazar*, 414 F.3d at 1345 ("an applicant's silence regarding statements made by the examiner during prosecution, without more, cannot amount to a clear and unmistakable disavowal of claim scope") (internal quotation marks omitted). West Chester's claim of inequitable conduct based on MadGrip's alleged failure to state its disagreement with the examiner therefore fails as a matter of law, and the motions to strike and dismiss on that point are **granted**.

C. **Other Allegations of Inequitable Conduct**

West Chester's amended claims further assert inequitable conduct with respect to the Stevenson declaration. West Chester

---

[1] The Federal Circuit has noted that the MPEP is not binding and does not have the force of law, but "is well known to those registered to practice in the PTO and reflects the presumptions under which the PTO operates." *In re Beigel*, 7 F. App'x 959, 965 (Fed. Cir. 2001) (quoting *Critikon, Inc. v. Becton Dickinson Vascular Access, Inc.*, 120 F.3d 1253, 1257 (Fed. Cir. 1997)).

14

alleges that although Mr. Stevenson mentioned several relevant prior patents in his declaration, he failed to "submit a copy of any of these patents or any of the language or figures from them." ECF No. 31 at 29. Those patents were allegedly not a part of the IDS, and were not listed as having been reviewed as part of either the '483 application or the '202 Patent. West Chester also claims that Attorney Florek and MadGrip listed these prior patents in the IDS for other, related applications, thus suggesting that the patents are material to the '202 Patent as well.

The Court finds that West Chester's affirmative defenses and counterclaims on this point have been adequately pled. In addition to setting forth, in significant detail, the relevant actors, subjects, locations, dates, and modes of the alleged misconduct, West Chester's allegations also allow for reasonable inferences of both materiality and intent. Specifically, The "who" in the allegations is Attorney Florek as the person in direct contact with the USPTO during patent prosecution. The "what" and "how" are the acts of withholding the relationship between MadGrip and the third party entity that retained Mr. Stevenson, as well as withholding allegedly-material patent information in its IDS. As to "when" and "where," West Chester alleges that Attorney Florek submitted the Stevenson declaration on December 17, 2013.

The standard for pleading inequitable conduct in a patent proceeding requires not only materiality and a failure to disclose, but also the intent to deceive. *Exergen Corp.*, 575 F.3d at 1327 n.3. As noted above, direct evidence of intent is rarely revealed, and circumstantial evidence may support for such a claim. *Therasense, Inc.*, 649 F.3d at 1290. Here, the alleged conduct offers a plausible claim that the duty of candor was violated, as material information about patentability, as well as a conflict of interest, was allegedly withheld in order to ultimately obtain a patent. The alleged omissions also present a pattern of conduct that permits a reasonable inference of intent. *See, e.g., Synventive Molding Sols., Inc. v. Husky Injection Molding Sys., Inc.*, 2009 WL 3172740, at *3 (D. Vt. Oct. 1, 2009) (submitting "a drawing to the PTO that omitted the features that allegedly rendered the pending claims unpatentable could give rise to an inference that they did so knowingly and with deceptive intent"). Accordingly, at the pleadings stage, the Court will allow West Chester to proceed with its affirmative defenses and counterclaims related to Mr. Stevenson. MadGrip's motion to strike those defenses and dismiss those counterclaims is **denied**.

## II. West Chester's Motion to Amend

Under the Federal Rules of Civil Procedure, courts "should freely give leave [to amend] when justice so requires." Fed. R.

16

Civ. P. 15(a)(2). "A district court has broad discretion in determining whether to grant leave to amend. . . ." *Gurary v. Winehouse*, 235 F.3d 792, 801 (2d Cir. 2000). Leave to amend "should not be denied unless there is evidence of undue delay, bad faith, undue prejudice to the non-movant, or futility." *Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

West Chester seeks leave to amend its pleadings to add the claims related to the Stevenson declaration and the alleged omissions in the IDS. Because the Court finds that West Chester has satisfied the relevant pleadings standards and has offered plausible claims, the motion to amend is **granted**.

## Conclusion

For the reasons set forth above, MadGrip's initial motion to dismiss and motion to strike are **granted**. MadGrip's subsequent motions to dismiss and to strike are **granted** in part, consistent with the Court's ruling on their initial motions, and **denied** with respect to the issues involving Mr. Stephenson. West Chester's motion to amend is **granted**, and the parties' joint motion for a protective order is also **granted**.

DATED at Burlington, in the District of Vermont, this 27th day of September, 2017.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge